Frank A. Gulotta, J.
This action for a declaratory judgment seeks a declaration to the effect that Local Law No. 1,1962, of the City of Glen Cove is invalid for the reason that it transcends the delegations of power granted by the State Legislature in chapter 278 of the Laws of 1947, as amended. The additional point is made that section 1 of article XYI of the State Constitution which provides in part that ‘ ‘ Any laws which delegate the taxing power shall specify the types of taxes which may be imposed” prohibits giving the enabling act an interpretation which would sustain the local law.
The facts are not in dispute and they have been stipulated to by the attorneys for the respective parties.
It appears that the plaintiffs are the owners of three theatres in Glen Cove and that the new law subjects them to a 5% tax on admissions, which they are directed to collect from their patrons. A good deal more has been shown, for example, that 90% of plaintiffs’ patronage comes from outside the City of Glen Cove, that there was local pressure to put the major tax burden on nonresidents and that it was the probable motive of the City Council to tailor the law to accomplish this result.
In the field of legislation, motive and intent have different connotations and, in the instant case, each must be separately considered for a proper disposition of some of the arguments propounded. The former may be defined as the impelling force or reason which induces action and precedes it. The latter signifies the intendment and meaning of the enactment, the purpose it seeks to accomplish, its construction, all as gathered from the text of the law itself, legislative studies, etc.
*774 Considered in this light the intent or meaning of the local legislation is not in issue hut the motive for its passage is. On the other hand the motive behind the State’s enabling act has not been questioned but its intent and meaning has.
In directing their attack upon the local enactment because of an alleged improper motive, plaintiffs point in the record to a transcript of what was said by members of the City Council and by persons attending the public hearings held prior to the law’s passage.
To fortify their position as to the interpretation to be given the enabling act they direct attention to a subsequent amendment which was proposed by a local legislator but which never reached the floor of the Legislature for discussion.
Neither of these arguments can be given any weight in the consideration of the issues for, as will be pointed out later, the motive behind legislation is not, generally speaking, within the Judicial orbit and, as to the second argument, whatever a particular legislator had in mind when he proposed an amendment some years later is no evidence of the legislative intent when the original bill was passed.
As to the latter point, see Matter of Delmar Box Co. (Ætna Ins. Co.) (309 N. Y. 60, 67) where it is stated: “ Reliance is placed upon the views expressed by the assemblyman who introduced the bill in 1952, but those views cannot serve as a reliable index to the intention of the legislators who passed the bill. It is sufficient to note that they were stated, not in the course of debate on the floor of the legislature, but in a memorandum submitted to the governor after the passage of the bill, and there is no showing that the other legislators were aware of the broad scope apparently intended for the bill by its sponsor. (Cf. Matter of Morse [Bank of America], 247 N. Y. 290, 302-303; Woollcott v. Shubert, 217 N. Y. 212, 221-222; 2 Sutherland on Statutory Construction [3d ed., Horack, 1943], § 5011.) ” As to the first preliminary argument, it is generally acknowledged that the motives of a legislature body, absent corruption, are beyond the pale of judicial inquiry, and therefore of no relevance or consequence. Bacon v. Miller (247 N. Y. 311, 318-319) contains the following apt quotation: “ With the motives which actuated the Board of Aldermen, we have nothing to do at all events in the absence of fraud or corruption.” The court in Kittinger v. Buffalo Traction Co. (160 N. Y. 377, 388) went much further and states: ‘ ‘ After considerable investigation of the subject I feel warranted in saying that there is no case in any court of last resort in this country holding that the motive of legislation may be inquired into by the courts and the legislation set aside, if in *775 the judgment of the court it was induced by dishonest and corrupt motives, and we are thus brought to a consideration of the authorities establishing the law upon that subject. Judge Cooley in his work upon Constitutional Limitations, under the head of £ Inquiry into Legislative Motives ’, page *186, said: 1 The courts must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding. And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon. ’ And the words of Chief Judge Denio in the leading case of People ex rel. Wood v. Draper (15 N. Y. 532-545) may well close the discussion on this particular branch of the subject: ‘ If a particular act of legislation does not conflict with any of the limitations or restraints which have been referred to, it is not in the power of the courts to arrest its execution, however unwise its provisions may be, or whatever the motives may have been which led to its enactment.” Later decisions however seem to detract from these sweeping statements. See McCutcheon v. Terminal Station Comm. of City of Buffalo (217 N. Y. 127,147-148): " But whatever the answer to that question may be, it is perfectly clear that no adequate basis is found in a correct conception of the facts and principles of law which are binding upon us on this appeal, for the proposition that the action of the commission is so utterly unjustified by any fair reason and results in such nnmitigated and overwhelming disadvantages to the city of Buffalo that it bears upon its face evidence which is conclusive upon us of fraud, corruption and bad faith.” And see Stahl Soap Corp. v. City of New York (5 N Y 2d 200).
However, none of these cases suggest that££ motive ” as such is a proper field of inquiry in assessing whether a legislative body has stayed within its powers, or that a selfish, ignoble motive can convert an otherwise legal act into one that is illegal. The nearest approach to this is the Stahl Soap case (supra) which sustained a complaint where the officially disclosed purpose showed that an ostensible taking of land for a public purpose was in fact a taking for a private purpose.
Neither is it discrimination in a legal or objectionable sense, that the practical effect of a law is to collect most of the tax *776 from nonresidents, whpre the terms of the law impartially treat all alike. One might as well contend that if the patronage survey showed more Caucasians attending the theatres, that the law was racially biased. As the Court of Appeals observed in Bucho Holding Co. v. Temporary State Housing Rent Comm. (11 N Y 2d 469, 477): '“A classification having some reasonable basis does not offend against [the equal protection] clause ’, the Supreme Court observed, ‘ merely because it is not made with mathematical nicety, or because in practice it results in some inequality.’ (Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, quoted with approval in Morey v. Doud, 354 U. S. 457, 463; See, also, People v. Friedman, 302 N. Y. 75, 80.) ”
Having disposed of these antecedent questions, we now come to the heart of the issue, viz., what taxing power was granted by the State to the municipalities by chapter 278 of the Laws of 1947, as amended, and is the local law violative of that delegation of power. What limitations, if any, did the Legislature intend to place upon the taxing powers of municipalities and what is the meaning of the enabling act H
Section 1 of chapter 278 of the Laws of 1947 authorizes counties outside New York City (and § 2 of chapter 278, as amended, gives like authority to a city such as Cien Cove) power to impose “ any or all of the following types of taxes ”. There then follow nine subdivisions labeled (a) to (i). Some of these are divided into many paragraphs which have numerous clauses of their own which fix with meticulous care what may be taxed: witness subdivision (a) which has an exception to an exception to an exception; first, food products are excepted from the tangible personal property tax; then beverages sold at bars are excepted from food products; finally' coffee, tea and beer are excepted from bar beverages, except when taxable under two other subdivisions. Emerging from this confusion seems to be a plan to cover a different type of tax under each subdivision, e.g., sales taxes on tangible personal property under subdivision (a), a restaurant tax under subdivision (b) [called paragraph (b) below], a utility tax under subdivision (c), a liquor license tax under subdivision (d), an amusement tax under subdivision (e) which is the topic which concerns us in this case, and others. In relevant part, subdivision (e) [called paragraph (e) below] reads as follows: “ Taxes not in excess of five per cent on admissions or subscriptions to and charges for entertainment, amusement or use of facilities therefor, including theatres, operas, athletic fields, sporting arenas, bowling alleys, billiard, pool and ping pong tables and other similar places or facilities of entertainment or amusement, except race tracks, boxing, *777 sparring or wrestling matches or exhibitions and coin operated amusement devices; on dues or membership fees to any social, athletic or sporting club or organization located within the county, except a fraternal society, order or association operating under the lodge system or any fraternal association of students of a college or university; and on all amounts paid for admission, refreshment, service or merchandise at any roof garden, cabaret or other similar place furnishing a public performance for profit, put on for any patron or guest who is entitled to be present during any portion of such performance. The term ‘ roof garden, cabaret or other similar place ’ shall include any room in any hotel, restaurant, hall or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise. A performance shall be regarded as being furnished for profit for purposes of this paragraph even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance. In the case of roof gardens, cabarets or other similar places the aggregate rate of tax under this paragraph and paragraph (b) of this section shall not exceed five percent.” (L. 1947, ch. 278, as amd. by L. 1952, ch. 742, § 3, and by L. 1961, ch. 369.)
The local law follows this classification only in part. It covers “ theatres, operas, athletic fields, sporting arenas, billiard, pool and ping pong tables and other similar places or facilities of entertainment or amusement in the city, including admission by season ticket or subscription, but excluding admissions or subscriptions to and charges for race tracks, boxing, sparring or wrestling matches or exhibitions and coin operated amusement devices.”
It will be observed that of the three categories set forth in subdivision (e), two are omitted entirely from the local law, to wit, the tax on dues and membership fees and the tax on roof gardens and cabarets. In addition bowling alleys have been excised from the first category.
The question now presents itself — Did the Legislature when it said “ any or all types of taxes,” mean to delegate to the municipality the right to further subdivide the types, or to pick and choose at its discretion, omitting those businesses within a type that it chose not to tax; or did they mean to allow a choice only as between the nine types as standardized by it, requiring a tax to cover in toto every tax object specified in any particular type or subdivision?
*778 The answer to this question is not free from doubt, but I am inclined to the latter view, mainly because of the phrasing used in some of the other subdivisions. For instance in subdivision (b) a tax of 3% on receipts of restaurants, cafes and bars, is authorized, whereas subdivision (c) allows a tax on any or all the following: gas, electricity, water. I take this to forbid singling out restaurants for tax and leaving bars untaxed, whereas illuminating gas would not have to be taxed simply because electricity was. Again, and most significantly, subdivisions (f) and (h), the former dealing with coin-operated amusement devices and the latter with the privilege of carrying on a trade, business or profession, both specifically say that the tax may be “imposed generally or upon selected types or classes.” There would be no need for such language except on the assumption that without it, there existed no right to pick and choose. Such an option is not to be found in subdivision (e) and therefore it would seem to follow that there is none.
Of importance too is the fact that the model local law which was prepared by the State Tax Commission pursuant to the mandate of section 10 of chapter 278 of the Laws of 1947 (as amd. by L. 1948, ch. 651, § 2) for the purpose of effectuating uniform administration and distribution of such taxes, in contrast with Local Law No. 1, follows the State statutory scheme and includes, without exception, every tax object listed in subdivision (e).
It should also be noted that section G46-2.0 of the New York City Administrative Code, the authority for which is this same subdivision (e) of section 1 of said chapter 278 of the Laws of 1947, being made applicable to cities of over 1,000,000 by section 3 of chapter 278 of the Laws of 1947, as amended, and which was passed upon in R. K. O.-Keith Orpheum Theatres v. City of New York (308 N. Y. 493, revg. 285 App. Div. 374, revg. 206 Misc. 602) follows the model law, although the point we have here to decide was not discussed in that case.
Accordingly, judgment is granted in favor of the plaintiffs and against the defendants, without costs.