Saul S. Streit, J.
Plaintiffs seek a declaratory judgment determining that Local Law No. 43 of 1971 of the City of New York is unconstitutional and invalid. They also ask for permanent injunctive relief against its enforcement by defendants.
It is plaintiffs’ contentions herein that Local Law No. 43, as enacted by the City Council of the City of New York (1) fails to comply with the provisions of the State’s “ enabling legislation ” (Tax Law, § 1201, subd. [f], as amd. by L. 1971, ch. 399; (2) unconstitutionally discriminates against them because it imposes a tax only upon plastic containers and not upon other similar items specifically enumerated in the enabling act; (3) deprives them of property without due process of law (allegedly forcing some of the plaintiffs out of business) and (4) imposes an undue burden on interstate commerce in violation of section 8 of article I of the Constitution of the United States.
*368 Prior to discussing the merits of the pending action and the proof adduced before me on the trial thereof, I deem it appropriate first to dispose formally of defendants’ motion to drop 29 of the 52 named plaintiffs, on the ground they are not proper parties, and therefore cannot maintain this action because there is no justiciable controversy between them and the defendants herein.
The subject local law, as more fully set forth hereinafter, imposes a tax of 2 cents upon every sale of a plastic container (with certain exceptions and exemptions not now relevant). This tax is to be paid by sellers of such containers to retailers, or by the latter group if the tax is not paid by the sellers. In substance, it is defendants’ position on their motion that the 29 plaintiffs they seek to drop from the pending action are not “ sellers ” of plastic containers to retailers, nor “ retailers ” (as defined in the local law) and, therefore, are not subject to the tax involved or to any of the obligations or penalties prescribed by the provisions of Local Law No. 43. Thus, as above stated, defendants assert, 1 ‘ there can be no justiciable controversy between [them] and the defendants with respect to this local tax law ’ ’.
As I indicated in the record in an “ informal ” disposition of the subject application, I do not agree. Initially, it is to be noted that, contrary to defendants’ claim, the papers before the court and the proof adduced at the trial (including the stipulated testimony of several named plaintiffs) indicate that many of the challenged plaintiffs, including Gary Plastic Packaging Corp., Imeo Container Co., Inc., Amory Chemical & Plastics Co., Inc., Union Carbide Corp., The Dow Chemical Company, National Distillers and Chemical Corp., Amoco Chemicals Corp., and Northern Petrochemical Company, do engage in sales of plastic containers to retailers within the City of New York. Therefore, many of them may, in fact, be subject to payment of the tax sought to be imposed by defendants by virtue of Local Law No. 43, or, at least their retailer customers are so subject. Others are engaged in the business of supplying the raw materials or the dyes and machinery used in the manufacture of plastic containers. Therefore, each of the challenged plaintiffs is materially affected by the tax here in question and has a substantial interest in the ultimate result of the pending litigation.
Recent decisions in both the Federal and State courts refute defendants ’ argument that only those parties who must pay the tax imposed by Local Law No. 43 have legal standing to test its constitutional validity. As I stated on the trial, contrary to *369 the views expressed by defendants herein, the current legal trend is toward enlargement of the class of people who may properly challenge legislative or administrative actions. As noted by the highest court of this country: 1' The whole drive for enlarging the category of aggrieved ‘ persons ’ is symptomatic of that trend” (Data Processing Serv. v. Camp, 397 U. S. 150, 154; see, also, Baker v. Carr, 369 U. S. 186).
Thus, the Supreme Court of the United States, in effect, has rejected defendants’ asserted limitation of “legal standing” only to those specifically affected financially or economically by a proposed legislative or administrative ruling. No longer does controlling law require that a plaintiff be directly regulated or taxed by a statute in order to challenge its constitutionality. Rather, as urged by plaintiffs herein, under applicable law, a “ proper ” plaintiff must only be “ substantially affected ” by the statute in question so that he has sufficient interest in the outcome of the litigation to provide that degree of adversity which will create a justiciable controversy between the parties (Baker v. Carr, supra, p. 204; see, also, Pierce v. Society of Sisters, 268 U. S. 510, 535).
In other words, rather than limiting the class of persons entitled to challenge the validity of a proposed law, the test of “persons aggrieved” has, today, shifted the focus from economic and pecuniary interests, as advocated by defendants (supra), to the assurance of a full “ adversarial presentation ” of a lawsuit. As succinctly stated in Weinstein-Korn-Miller (vol. 3, N. Y. Civil Practice, par. 3001.04): “ If the requirement of standing is given a narrow construction when there is involved constitutional or important statutory rights * * * then there is, in effect, no practical remedy for anyone with an interest in enforcing the right — and the right becomes but a mockery ’ ’.
Despite defendants’ argument to the contrary, New York courts, in effect, have repeatedly applied the above-stated 1 ‘ enlarged standard ’ ’ in recent determinations regarding the ‘ ‘ right ” of a party to challenge the propriety of acts of governmental authorities (see Marcus v. Village of Mamaroneck, 283 N. Y. 325; Matter of Haber v. Board of Estimate, 33 A D 2d 571, 572; Westchester Motels v. Village of Elmsford, 20 A D 2d 818; Brechner v. Incorporated Vil. of Lake Success, 23 Misc 2d 159).
In any event, in the case at bar, there can be no doubt that Local Law No. 43 contains sufficient direct regulation of and attempted control over the business of each of the 29 challenged plaintiffs to give them a substantial interest and stake in the *370 outcome of this litigation. Thus, in my opinion, each such party-plaintiff has thereby attained proper legal standing to maintain the pending action (see Matter of Evans v. Buscaglia, 27 A D 2d 317; see, also, Socony-Vacuum Oil Co. v. City of New York, 247 App. Div. 163).
In this regard, in view of defendants’ past conduct and activities with respect to the plaintiff, ¡Society of the Plastics Industry, Inc., I find their present application respecting this particular organization to be wholly unwarranted and without merit. It is significant that defendants do not dispute plaintiffs’ assertion that defendant City of New York has consistently recognized the society as the “ real adverse party ”. Furthermore, the papers and proof before the court show that the city has, on at least .several occasions, invited this particular plaintiff to present its views on the local law and has accepted its statements at public hearings as representative of the industry concerned therewith.
G-iving due consideration to these facts and inasmuch as the subject legislative edict is so vital to the interests of the plastics industry as a whole, as represented by the society, it would be an improper and improvident judicial act to bar this plaintiff from now participating as a party to the action (see Associated Ind. v. Ickes, 134 F. 2d 694; Data Processing Serv. v. Camp, 397 U. S. 150, supra). Upon all of the evidence before me, therefore, I hold that defendants’ motion to drop parties-plaintiff is, in all respects, denied.
Plaintiffs’ initial contention is that Local Law No. 43 was not authorized by the State Legislature and thus violates the provisions of section 1 of article III and section 1 of article XVI of the New York State Constitution.
It is well settled that these constitutional provisions grant all taxing power in New York State to the State Legislature and provide that such power may be delegated to municipalities only through laws which specifically designate the tax that can be imposed (see Genet v. City of Brooklyn, 99 N. Y. 296). A municipal corporation does not possess the inherent power to assess and levy taxes. Its power to tax is derived solely from State legislative enactment (see County Securities v. Seacord, 278 N. Y. 34, 37; Rhyne, Municipal Law, § 28-1). Thus, the Court of Appeals, in Matter of United States Steel Corp. v. Gerosa (7 N Y 2d 454, 459) stated that the State Legislature has the exclusive power to tax, “ including the power to determine the class of persons to be taxed * * * which it may delegate to its municipal subdivisions, including the City of New York”. The court cautioned, however, that “ any taxes *371 imposed by the [City of New York] must be within the expressed limitations * * * and, unless authorized, a tax so levied is constitutionally invalid (Matter of Long Is. R. R. Co. v. Hylan, 240 N. Y. 199).”
It is also well settled that statutes authorizing the levy of taxes are to be strictly construed (see 16 McQuillin, Municipal Corporations [3d ed.], § 44.13). City tax ordinances must strictly conform to the provisions of their enabling acts. If the authority of the city to tax is doubtful, the doubt must always be resolved against the tax.
The enabling act authorizing the city to impose the subject tax (L. 1971, ch. 399) added a new subdivision (f) to section 1201 of article 29 of the Tax Law. Article 29 of the Tax Law is an omnibus enabling statute authorizing various localities of the State to impose a variety of taxes. Section 1201, dealing with taxes administered by cities of one million or more in population, authorizes such cities to adopt and amend local laws imposing “ any or all of the types of taxes set forth in the following subdivisions of this section”. Subdivision (f) of this section is entitled, ‘ ‘ An act to amend the tax law, by adding thereto provisions enabling any city with a population of one million or more to impose taxes to promote the recyling of containers and reduce the cost of solid wastes disposal to such city.”
This subdivision authorized New York City to impose, “ Taxes on the sale of containers made in whole of in part of rigid or semi-rigid paper board, fibre, glass, metal, plastic or any combination of such materials * * * intended 'for use in packing or packaging any product intended for .sale.”
The enabling act set the maximum rates of taxes on the different kinds of materials at 3 cents for each plastic bottle, 2 cents for each other plastic container, 2 cents for each glass container, and 2 cents for each metal container, except 1 cent for each metal container made of only one metal. Where a container is made of a combination of two or more of these materials, it is taxable as if it were made of the component material having the highest rate on the following table: fiber and paperboard- — -1 cent; metal — 2 cents; glass — 2 cents; plastic — 3 cents. (Presumably, the tax on containers made solely of fibre or paperboard was intended to be 1 cent each, although the enabling act fails to list a maximum rate for containers made solely -of said materials.)
The enabling act requires that the local law imposing the taxes allow specific credits against the taxes on the basis of the percentage of ‘ ‘ recycled material ’ ’ of which the container *372 is made, the required percentages being 80% for paper and fibreboard; 30%-40% for metal; 20%-30% for glass and 30% for plastic.
In June, 1971, allegedly pursuant to this enabling act, the City Council of the City of New York passed, and the Mayor signed, Local Law No. 43 of 1971, which added a new title F to chapter 46 of the Administrative Code of the City of New York.
The stated purposes of the local law are, “ raising revenue by imposing taxes on plastic containers a/nd to promote the recyling of such containers and reduce the cost of solid waste disposal of the city.” (Emphasis supplied.)
This local law provided, inter alia, for a tax of 2 cents on the .sale of every “rigid or semi-rigid plastic” container by a seller or supplier to a retailer on or after July 1, 1971 and for the allowance of 1 cent for each taxable container that is manufactured with a minimum of 30% recycled material.
Plaintiffs contend that this local enactment, exempting from taxation all containers made of metal, glass, fibre and paperboard, is invalid because it fatally deviates from and exceeds the delegation of taxing power granted by the enabling act. Plaintiffs argue that the enabling act fixed the ‘1 taxable class ’ ’ as ‘ ‘ containers made in whole or part of rigid or semi-rigid paperboard, fibre, glass, metal, plastic or any combination of such materials ”, and that if the city chose to act pursuant to the taxing authority delegated to it, the city must impose a tax on the entire taxable class.
Defendants contend, however, that the blanket authorization contained in section 1201 of the Tax Law to impose “ any or all of the types of taxes set forth ” therein, empowers the city to pick and choose from the types of materials enumerated in the container tax enabling act. Analogizing to the broad scope of authority granted under ‘ ‘ Local Home Rule ’ ’, defendants urge a liberal construction of the enabling act. In their trial memorandum, defendants argue that, 1 ‘ Considering the purpose sought to be achieved by the Enabling Act, it is inconceivable to believe that it was intended that the City should not have the same right to exercise its judgment and make distinctions between the different containers therein mentioned, similar to those the State Legislature could make, on the basis of their qualities and characteristics in relation to waste disposal problems. Obviously the intent was to enable the City to try out the possibility of reducing the difficulties and cost of waste disposal created by containers, by imposition of taxes on those categories of containers which presented the greatest waste *373 disposal burdens for the City * * #. The use of taxes for waste disposal control purposes is a novel device not before used. * * * It would be unreasonable to believe that in embarking upon this experiment the City would not have the right first to try out this method with respect to one of the authorized types of containers which presents the greatest problem, before applying it to the others. ’ ’
At the outset, the parties all agreed that this challenge to the validity of the local law raised only a question of law. While it so appeared to the court as well, decision on this issue was withheld until the presentation of all evidence, to determine if there was any validity to defendants’ argument that the uniqueness of this ecologically inspired tax took it out of the general rules for construction of municipal implementation of delegated taxing authority.
All the evidence having been presented, I find no merit in defendants ’ contentions. Home Rule principles are simply inapplicable in the determination of the scope of delegated local tax powers (see Weber v. City of New York, 18 Misc 2d 543; see, also, County Securities v. Seacord, 278 N. Y. 34, supra). The blanket authorization of section 1201 of the Tax Law does permit New York City to impose “ any or all of the types of taxes ” set forth in its various subdivisions. However, the type of tax set forth in subdivision (f) was a tax on rigid and semi-rigid containers made of 5 specified types of materials. The contention that each type of container material may thus be the subject of a separate tax strains the plain meaning of the law and contravenes the tenet of strict construction of tax statutes. Moreover, I find the decision in Glen Cove Theatres v. City of Glen Cove (36 Misc 2d 772) to be most persuasive authority for the position urged by plaintiffs. The court in Glen Cove rejected an argument similar to that urged by defendants herein, with respect to the blanket authorization contained in section 1201 of the Tax Law on the basis of internal evidence in the statute itself. The type of tax authorized by subdivision (c) of section 1201 is a “ privilege tax ’ ’ on coin-operated amusement devices. That subdivision, however, specifically authorizes municipalities, when exercising their taxing authority, to pick and choose from among the various types of classes of such devices. The court in Glen Cove, in rejecting a selective “ amusement tax ” imposed upon only a portion of the class enumerated in the enabling act (then subdivision [f] of section 1201), noted that the specific grant of discretion contained in the coin-operated amusement device subdivision negated any implied or inherent right of discretion with respect to any other subdivision. 1 ‘ There *374 would be no need for such language except on the assumption that without it, there existed no right to pick and choose.” (36 Misc 2d 772, 778.)
It would appear that the Glen Gove decision is but a judicial confirmation of a long-standing administrative interpretation given the Tax Law by the State Tax Commission. A subsequent law review commentary, co-authored by the then Commissioner of the New York State Department of Taxation and Finance, notes that, “ It has long been the position of the Tax Commission as advisor to municipalities on questions arising under the act enabling them to impose non-property taxes of various kinds, that the municipality must take certain categories of taxes as a package, not exempting items or activities to be taxed which were not exempted by the terms of the enabkmg act. * * * Glen Cove Theatres, Inc. v. City of Glen Cove provides us with the first judicial affirmation of this position within New York.” (J. Murphy and E. Book, State and Local Taxation, 15 Syracuse L. Rev. 223, 227 [emphasis added]).
Finally, the legislative history of the enabling act itself supports the conclusion that the State Legislature intended to impose a tax on all the enumerated container materials. Indeed, the entire scheme of the tax authorized by the State Legislature (characterized by its proponents as a 1 ‘ Becycling Incentive Tax ”) is premised upon the taxation of all such containers. Quite apart from the claimed right of a municipality to pick and choose from among the component members of a taxable class, as an abstract legal proposition, such discrimination in the instant case would necessarily defeat the purpose and intent of the enabling act.

Unless the tax were imposed upon all the enumerated types of container materials there could be no “ incentive ” to recycle containers nor to reduce significantly the amount of solid ivaste or the cost of its disposal. The only “incentive” created by a tax on one, rather than all types of containers, would be the incentive to switch from the taxed type to the exempted types, with no reduction in the volume of containers used and no recycling.

When the city chose to tax only plastic containers, it did not, as it contends, simply enact a “lesser” included tax. Rather, it legislated an entirely different tax; one whose true purpose and, effect was, as conceded by defense counsel, “ to curtail the amount of plastics, and to eliminate as many plastics as possible.” Nothing in the enabling act or its legislative history supports the contention that the Legislature contení,plated or authorised the resulting destruction of the plastic container 
*375
industry, for the ultimate benefit of the paper, glass and metal industries in New York City.

I conclude that Local Law No. 43 exceeds the authorization granted by the State Legislature, is thus violative of the provisions of section 1 of article III and section 1 of article XVI of the State Constitution, and is, therefore, invalid.
Plaintiffs also contend that the challenged tax violates the Equal Protection Clauses of the Fourteenth Amendment and section 11 of article I of the New York State Constitution in that it imposes unreasonable and arbitrary classifications unrelated to the object of the legislation. They further argue the imposition of the tax will destroy their businesses and that this constitutes a deprivation of property without due process of law in contravention of the Federal and State Constitutions.
At the outset, defendants challenge the basic premise that a court may inquire as to whether the tax imposed bears a reasonable relation to the object of the enabling legislation. They contend that any imaginable state of facts which could justify a separate treatment of plastics would enable the city to impose a tax on it under the Equal Protection Clause. Abandoning their initial contentions and concessions with respect to the primary objects of this law, defendants now assert that this is merely a revenue-raising statute and any effect it may also have on reducing solid wastes, and promoting recycling is “purely incidental and tangential.” We are told to ignore the title and stated purposes of the enabling act and Local Law and are directed to cases espousing the familiar rule of statutory construction that the title of a statute does not conclusively establish its objects and purposes.
I find no merit in the position here taken by defendants. The presumption of constitutionality which attaches to legislative action is a presumption of fact, of the existence of factual conditions supporting the legislation. As such, it is a rebuttable rather than a conclusive presumption. There is no rule of law which makes legislative edict invulnerable to constitutional assault. Nor is such an immunity achieved by treating any fanciful conjuncture as sufficient to repel attack (see Borden’s Co. v. Baldwin, 293 U. S. 194, 209 and cases cited therein). In a recent decision involving an equal protection challenge to a State law, the Supreme Court stated the present day view that, ‘ ‘ In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.” (Williams v. Rhodes, 393 U. S. 23, 30).
*376 Likewise with respect to the related due process argument, a recent commentary observes that, “ Substantive due process litigation illustrates, as well as any area does, the importance of facts in constitutional adjudication and the function of the courts in regard to such facts. It can be stated very broadly that virtually all of the facts persuasive to a legislator in voting for or against legislation are within the judicial scrutiny in passing upon the constitutionality of laws attacked as violative of due process.” (2 Antieu, Modern Constitutional Law, § 15:37, p. 703).
Indeed, an examination of the authorities cited by defendants themselves supports this position. Defendants place great reliance upon Magnano Co. v. Hamilton (292 U. S. 40 [1934]) which they assert is “ dispositive of and indistinguishable from the equal protection question raised here.” In that case, the United States Supreme Court sustained a tax on oleomargarine which was so high as to place it at an economic disadvantage with its principal competitor, butter. The court dismissed an equal protection clause argument with the terse comment (p. 43) that “it is obvious that the differences between butter and oleomargarine are sufficient to justify their separate classification for purposes of taxation ”, and declined to make judicial inquiry into the collateral purposes and motives behind an otherwise lawful tax levy. Defendants assert that the differences between plastic containers and all the other types is also so obvious as to justify their separate classification for tax purposes. What defendants overlook is that Magnano was preceded by a line of oleomargarine tax cases (see, e.g., Hammond Packing Co. v. Montana, 233 U. S. 331; McCray v. United States, 195 U. S. 27; Capital City Dairy Co. v. Ohio, 183 U. S. 238; Matter of Kollock, 165 U. S. 526) wherein the factual basis underlying the distinction between the two products was judicially examined in extensive detail before any conclusion on the equal protection or due process assertions was reached. Not only was there careful consideration of such things as the ingredient composition of the two products and the danger of consumer fraud and deception (passing off colored margarine as pure butter), but also consideration of the legitimate State interest in protecting the dairy farming industry (which formed the principal tax base in States adopting such legislation) from the destructive onslaught of cheaply produced butter substitutes.
This court perceives no obvious distinction between plastic containers and all other types and, in line with impressive precedents, has put the parties to their proof on this question.
*377 Defendants ’ contention that the mere titles of the challenged law and enabling act are not to be deemed controlling on the issue of the purpose and objectives of the legislation is not questioned. However, a problem only arises with the title of a statute when it is sought to be used to improperly extend, restrict or alter the unambiguous text of the statute (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 123, subd. a, pp. 246-247; Squadrito v. Griebsch, 1 N Y 2d 471, 475). There can be no dispute that the object of a statute is to be determined by its provisions, and not merely by its title (see People v. O’Brien, 111 N. Y. 1, 59). Nevertheless, this fact adds nothing to defendants’ case. An examination of the provisions of the enabling act, including its mandatory tax credit provisions for use of recycled materials, its requirement that implementing regulations promulgated by the Finance Administrator be based upon the recommendation, inter alia, of the department or agency charged with the duty of waste collection and disposal, its provisions that the granting of tax exemptions, credits and surcharges be based upon considerations of difficulty of recycling, re-use and relative cost of disposal of containers, and a host of other provisions, establish beyond question that the title of the enabling act accurately and unambiguously reflects the purpose and objectives of the tax. These are: to promote the recycling of containers and reduce the cost of solid waste disposal to the city. Moreover, any doubts as to the. legislative intent are dispelled by the legislative history. This legislation is the brainchild of the city’s Environmental Protection Administration, which conducted investigations and hearings, drafted the proposed enabling act, and, together with the city’s Legislative Representative, lobbied for its passage. A review of the correspondence supporting this so-called “ New York City Recycling Incentive Tax,” sent to members of the Legislature by Jerome Kretchmer, the City’s EPA Administrator and Richard Brown, the Mayor’s Legislative Representative, demonstrates that the purpose and objectives of this legislation were, from its inception, exactly as stated in the title of the act. (Interestingly, the architect of this law, Mr. Kretchmer, had a great deal more to say about its background and purposes on the motion for a preliminary injunction herein.) Upon the trial, however, the defendants disavowed all that Mr. Kretchmer had to say upon the preliminary proceeding, failed to offer in evidence his sworn affidavits thereon, and declined to call him as a witness. The only proof of the legislative history of the enabling act introduced into evidence consisted of the two letters to the legislators, referred to above.
*378 An examination of the text of Local Law No. 43, with its critical provision for a tax credit for the nse of recycled material and its express statement that it is to be construed and enforced in conformity with the enabling act (L. 1971, ch. 399) “pursuant to which it is enacted,” leads to the conclusion that the local law was ostensibly enacted for the very same objectives and purposes. An interesting footnote to the legislative history of Local Law No. 43 is that the original bill introduced in the City Council was in exact conformity with the enabling act, imposing a tax upon containers made of glass, metal, paperboard and fibre, as well as plastic. The legislative process and reasoning, whereby the final product which emerged from the City Council so varied with the original, is concededly a mystery to both sides in this case. From the evidence presented to this court, the enactment of a tax only on plastic containers, allegedly in conformity with the enabling act, does not appear to be the result of any rational or reasonable legislative process.
Plaintiffs’ assertion that the discrimination against plastic containers was an arbitrary one appears valid. Plaintiffs’ further assertion that this discrimination was not grounded on any difference having a fair and substantial relation to the object of the legislation was established by an overwhelming preponderance of the credible evidence presented.
I find the expert testimony established that it costs no more, and probably less, to collect plastic containers than to collect paper, metal or glass containers. The significant cost factor in the municipal collection of solid waste is the weight of the refuse load. Plaintiffs’ expert witness conclusively demonstrated that plastics, being lighter than the other materials, were easier to lift and carry, thus increasing the productivity of sanitationmen. It follows that if the enforcement of this law resulted in the substitution of paper, glass or metal containers for plastic containers, the costs of solid waste collection would increase rather than decrease.
Once collected, the city’s solid wastes are disposed of by two methods — incineration and sanitary landfill. Expert testimony established that plastic containers are cheaper to dispose of by incineration than glass or metal containers. These latter types do not burn and some 30% of the cost of incineration is removal of the residue left after incineration. Defendants’ experts attempted to show that plastic containers increase the cost of incineration because (1) excessive heat generated by burning plastic damages vital parts of the incinerator; (2) combustion of plastics requires more air than presently equipped incinerators can feed to insure clean (i.e., pollution free) burning and modi *379 fication of existing incinerators would be very costly; (3) melting plastics damage and impair the operation of the incinerators; and (4) one type of commonly used plastic, polyvinylchloride, when burned, emits chlorine gas which, combining with water vapor, forms an acid (HCL) which damages vital parts of the incinerator. However, these contentions were based upon the presence in the waste load to be incinerated of a percentage of plastic far in excess of that shown to presently exist or projected in the foreseeable future. Defense experts conceded that plastic content not in excess of 10% of the total of an incineration load was within the capabilities of the city’s present incinerators and did not produce the dire results enumerated. Plaintiffs challenged this 10% figure as too low but established in any event, that plastic containers constitute no more than 1.5% of the city’s solid waste load. (Surprisingly, defendants could point to no current survey conducted by the city which established the actual composition of the city’s solid waste.) Polyvinylchloride, the only type of plastic packaging which produces HCL, comprises at most only 10% of the 1.5% of plastic containers, an insignificant portion of the total solid waste loads. There was no credible evidence that this minute amount causes any acid damage to the city’s incinerators. Moreover, it was conceded that other waste materials produce HCL upon incineration, including paper, grass cuttings and common table salt, but no percentages, proportions or amounts of HCL thus produced were presented by defendants. In sum, defendants failed to establish that plastic containers cause any damage or increase in repair costs to the city’s incinerators.
Expert testimony also established that plastic containers occupy no more space in the city’s collection trucks or in the city’s sanitary landfills than an equal number of glass, metal or paper containers and may well occupy less space therein. It is conceded by plaintiffs that plastics are not biodegradable. While defendants laid stress on the desirability of biodegradable waste for sanitary landfills, plaintiffs’ expert refuted this contention, noting that biodegradable waste may cause leaching, with resultant pollution of ground water, settling of the landfill (making it unsuitable for many uses), and the production of noxious hydrogen sulfide gas and explosive methane gas. Thus, the desirability of biodegradable waste for landfill is at best arguable. In any event, it was established that neither glass nor metal is biodegradable. Consequently, whatever its merits, this property of waste materials forms no basis for distinguishing between plastic, glass and metal.
*380 Accordingly, plaintiffs have demonstrated by convincing proof that the discrimination against plastic containers, does not rest upon any ground of difference having any relation to the objective of the legislation to reduce the city’s cost of solid waste disposal.
With respect to the objective of recycling containers, it has already been noted that the local law not only fails to induce or .require recycling of present containers made of glass, metal, paperboard and fibre, but logically will lead to an increase of such containers in use, defeating both objectives of the enabling act. It remains to be considered whether Local Law No. 43, directed only to plastic containers, will lead, or can lead, to recycling of that one type of container.
The local law defines ‘ ‘ recycled material ” as “ component materials which have been derived from previously used material or from new or old scrap material.” Plaintiffs’ witnesses established that “ new scrap ” is generated in the very process of molding plastic containers and that such scrap is immediately recovered and returned to the process for re-use. As a consequence, the bulk of plastic containers now contain ‘ ‘ recycled ’ ’ materials as defined by the local law. The same witnesses asserted, without contradiction, that aside from special orders (e.g., certain government contracts) the percentage of recycled materials (i.e., new scrap) in plastic containers presently manufactured is at least 30%. Since this is the percentage required for the tax credit incentive to be operative, the local law can hardly be deemed to promote that which is already being done. To the extent that recycling is sought from materials contained in the city’s .solid waste, expert evidence established that there is no economically feasible way to reclaim any of the types of containers enumerated in the enabling act from the solid mass of waste collected by the city. Indeed, whether the assumption be valid or not, it appears that the city proceeded on the assumption that plastic containers ccurmot be recycled, in the sense of being reclaimed after consumer disposal and ground up for use in a new product. Defendants’ expert witness indicated that he was unaware of any plastic container recycling. Significantly, the afore-mentioned letter from Jerome Kretchmer, Administrator of the city’s Environmental Protection Administration, addressed to all members of the State Legislature and City Council urging enactment of the tax, asserts that plastic containers are ‘ ‘ generally unrecyclable. ’ ’ If the local law was grounded upon this assumption then it is to be doubly damned, for there was not one shred of evidence presented herein which demonstrates that any form of container, glass, metal or paper *381 board, is any more recyclable than plastic containers; secondly, if the claimed objective of recylcing plastic was preordained by its authors as impossible, then the statute is a fraud.

It thus appears that the discrimination against plastic containers does not rest on any reasonable basis in relation to the objective of promoting the recycling of containers, plastic or otherwise.

During the trial, defendants attempted to show that one of the prime differences between plastic and the other container materials was plastic’s alleged adverse contribution to air pollution upon incineration and that the city sought this tax as an air pollution control measure. Defendants’ proof that plastic containers are significant air pollutants was weak and inconclusive. Defendants’ proof that the enabling act was sought as an air pollution control measure was nonexistent. Aside from a passing reference to air pollution resulting from incineration of total solid wastes contained in the letter from the Mayor’s State Legislative Representative to members of the Legislature, no proof was offered that any responsible city official advised the Legislature that the city sought the power to destroy the plastic container industry to aid in the fight against air pollution.
In sum, I find from the evidence adduced that the discriminatory classification established by the local law is unreasonable and arbitrary and does not rest on any ground of difference having any relation to the object of the legislation (see Royster Guano Co. v. Virginia, 253 U. S. 412, 415; Louisville Gas Co. v. Coleman, 277 U. S. 32 : Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389; Matter of Merchants Refrigerating Co. v. Taylor, 275 N. Y. 113), either in terms of the city’s cost of collection and disposal of solid wastes or promotion of recycling of containers or, indeed, the raising of revenues.

I conclude that plaintiff's have established by a preponderance of the credible evidence that Local Law No. 43 is violative of the Equal Protection Clauses of the Federal and State Constitutions.

Referring again to plaintiffs’ contention that the local law also violates the constitutional protection of due process, the essential proof here offered by plaintiffs was that they have already suffered severe financial losses and face certain destruction of their businesses. Having already demonstrated that the local law was arbitrary in its inception, incapable of accomplishing its avowed objectives in its execution, and lacks any other legitimate legislative purpose, plaintiffs assert that the loss and destruction of their businesses constitutes a deprivation of property without due process of law in contravention of the *382 Fourteenth Amendment and section 6 of article I of the State Constitution.
A statute which interferes with or takes away a person’s property must be reasonably calculated to accomplish some proper public purpose (see, e.g., Fisher Co. v. Woods, 187 N. Y. 90). The mere fact that this is a tax statute will not save it from invalidation for constitutional infirmity (Grosjean v. American Press Co., 297 U. S. 233). Indeed, the contention that Local Law No. 43 is purely a revenue-producing’ measure and that all other consequences of its enforcement are incidental is, in light of the evidence adduced, sham. The avowed primary purpose of the law is clearly to promote the recycling of plastic containers and to reduce the cost of solid waste disposal. The actual result of the law, as plaintiffs’ evidence establishes, is the destruction of an industry to the benefit of its competitors without proof of any legitimate public reason therefor.
Defendants have not seriously attempted to refute plaintiffs ’ proof of present damage and certain future destruction of their businesses, as a result of this local law. Uncontradicted testimony of witness after witness, bolstered by documentary proof, has established that the mere passage of this tax has already cost individual plaintiffs hundreds of thousands of dollars in business (i.e., canceled orders) and that implementation of the tax will result in the total destruction of the business of many plaintiffs. One of the most significant reasons for such dire consequences is that in a great many cases the tax imposed by the law equals or exceeds the price of the article taxed, and in almost all instances, it greatly exceeds the profit margin available to the manufacturer or seller. A further reason is that the tax attaches to each and every plastic container, so that the currently popular use of multiple containers within a single packaged product gives rise to a multiple tax, with the potential for increasing by up to 50 % the retail price of products ranging from cigars to sanitary napkins.
Equally important is the complex record-keeping requirement of the law. Quite logically, retailers have concluded that they can avoid the burden and expense of any possible record-keeping by the simple expedient of switching to one of the untaxed type of containers for their products.
Ironically, several plaintiffs testified that they were encouraged into developing their plastic container businesses by various governmental agencies, including in one case, defendant Finance Administrator, and to employ and train disadvantaged and unskilled workers. In this respect, the passage of Local Law No. 43 has already required the lay off of many hundreds *383 of such workers and its enforcement would result in returning all to the unemployment rolls.
(Further irony is found in the fact that contemporaneously with the development of this tax, the city has been encouraging and requiring the use of plastic bags for garbage, because plastics are light, durable and cut collection costs. Not surprisingly, defendants’ experts perceived no problems connected with the collection or incineration of this particular type of plastic container.)
I find from the credible evidence presented that Local Law No. 43 will operate arbitrarily to damage or destroy plaintiffs’ businesses without serving any permissible public objective and thus deprives plaintiffs of property without due process of law in violation of the Federal and State Constitutions and is, therefore, invalid (Fisher Co. v. Woods, supra; Grosjean v. American Press Co,, supra).
Plaintiffs assert a further basis for their claim of denial of due process, namely that the statute is unduly vague. Although the local law imposes a tax which must be paid under threat of criminal prosecution, it gives no standards by which the terms 1 ‘ rigid or semi-rigid plastic ’ ’ can be defined. The enabling act is of no assistance here, since it also fails to define these terms. The City Finance Administrator’s “Information Bulletin” CT-1 gives illustrations of what that office views as “ rigid and semi-rigid ’ ’ plastic, but some of its illustrations are so at variance with common sense that even defense counsel was compelled to concede their error. The only reference cited to the court by defense counsel was “ any dictionary”. Indeed, one of defendants ’ experts confessed that he did not know what was intended by these terms and sought a definition from the court.
As the Supreme Court stated in Connally v. General Constr. Co. (269 U. S. 385, 391): “A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.”
For the additional reason of vagueness, then, I find that Local Law No. 43 is violative of the Due Process Clauses of the Federal and State Constitutions.
Plaintiffs’ final contention is that Local Law No. 43 imposes an undue burden on interstate commerce in violation of section 8 of article I of the United States Constitution. Plaintiffs base this contention on three grounds: (1) that the law favors New York City wholesalers of plastic containers over out-of- *384 State wholesalers; (2) products packaged in plastic containers are distributed on a national basis and the possibility of inconsistent legislation passed by various localities will impose an undue burden on interstate commerce; and (3) the excessive record keeping requirements of the local law discourage interstate traffic in plastic containers.
Under Local Law No. 43 the taxable event is the sale of a plastic container by a wholesaler or supplier to a retailer for use in connection with or as part of a sale to the consumer. The tax is imposed upon the wholesaler or seller, but if he fails to pay, the retailer must do so. Out-of-State wholesalers, however, are exempt from the tax, so that their local retailers bear the primary burden of paying the tax. Plaintiffs argue that there is an improper discrimination against out-of-State wholesalers since retailers who continue using plastic containers despite enactment of Local Law No. 43 will undoubtedly favor local suppliers in order to avoid having to pay the tax personally and to avoid the onerous record keeping requirements of the law. I do not find merit in this contention. The scheme of taxation is not novel in this particular feature and it would seem permissible to hold a local vendee liable for the tax even though the goods are shipped interstate, without doing violence to the Commerce Clause (see McGoldrick v. Berwind-White Co., 309 U. S. 33; cf. Henneford v. Silas Mason Co., 300 U. S. 577 [compensating use tax] ; see, also, National Bellas Hess v. Department of Revenue, 386 U.S. 753).
With respect to the burden of record keeping incidental to liability for the tax, I do not believe that this feature of the tax standing alone is sufficient to condemn the law as a burden on interstate commerce.
Plaintiffs have called the court’s attention to the recent enactment by Congress of the “ Solid Waste Disposal Act ” (U. S. Code, tit. 42, § 3251 et seq.) wherein Congress announces a finding that the problem of solid waste is a matter ‘ ‘ national in scope ”, and directed the Secretary of Health, Education and Welfare to conduct an investigation to determine, inter alia, “ the necessity and method of imposing disposal or other charges on packaging, containers * * * which charges would reflect the cost of final disposal, the value of recoverable components of an item, and any social costs associated with non-recycling or uncontrolled disposal of such items.” (U. S. Code, tit. 42, § 3253-a, subd. [a], par. [7]).
Plaintiffs contend that in the face of this declaration by Congress, individual communities should not be permitted to begin enacting locally-conceived, locally-oriented legislation *385 because of the danger of creating a welter of conflicting and inconsistent regulations (see National Bellas Hess v. Department of Revenue, supra, pp. 759-760). While this raises an interesting question, plaintiffs did not, upon the trial, sufficiently pursue the matter so as to permit a finding that the problem of solid waste disposal control has been Federally pre-empted. I find, therefore, that plaintiffs failed to sustain the burden of proof on this last contention.
In recapitulation, I find that (1) the local law was not authorized by the State Legislature and thus violates the provisions of section 1 of article III of the New York State Constitution; (2) the imposition of the tax only on plastic containers, exempting glass, metal, paperboard and fibre containers, is an arbitrary classification bearing no reasonable relation to the objectives of the legislation and thus violates the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution; and (3) the local law will operate arbitrarily to damage or destroy plaintiffs ’ businesses without thereby serving any legitimate public purpose and said law is so vague in its essential terms that it constitutes a deprivation of property without due process of law and contravenes the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York State Constitution.
I therefore declare that Local Law No. 43 of 1971 is unconstitutional, invalid and void. Defendants, their agents, attorneys, servants and employees are permanently enjoined from enforcing, carrying out, implementing or otherwise giving effect to the provisions of said local law.